for the purpose of saying, that it would be, if so understood, no less a violation of the contract than in the other views that have been presented.

I am now done with this Act of Assembly. Contemplated in any light in which I have been able to view it, it seems to me an unconstitutional enactment. It places Pennsylvania in the perilous position of a sovereign punishing for unascertained offences—reclaiming forfeitures once released for a consideration—and taking from the citizen his property, without compensation or trial.

It only remains for me to condense my thoughts into two propositions.

1. The act is unconstitutional, because it impairs the obligation of a contract, and is warranted by nothing contained in the contract.

2. Because it takes private property for public use, without just compensation.

On these grounds I would award the injunction.

## WESTERN DISTRICT, PITTSBURGH, 1856.

## Pattison *versus* Horn.*

1. A parol promise to convey lands, gives no title to the promissee.

2. A trust cannot be established by merely showing that the owner of the legal title promised, when he bought, that he would convey to the alleged *cestui que trust*, upon his being repaid the purchase-money.

3. A parol promise, by the owner of the legal title, at the time he bought, that he would convey to the alleged *cestui que trust*, upon his being repaid the purchase-money, is within the Statute of Frauds, and, although an action at law may be sustained on it, a specific execution will not be decreed.

4. When an absolute conveyance is taken by a surety or creditor, as a security for a debt, parol evidence may be given to prove the true nature of the agreement, without violating either the Statute of Frauds, or that rule of evidence which forbids that a writing shall be varied by parol.

5. A man cannot take a conveyance of land, in pledge for the payment of money, and afterwards hold it as his own.

6. If A. bound himself to pay money for B. to C., and took a deed to himself from C. for B.'s land, in order to secure the reimbursement of the money, he was a mortgagee of the land.

ERROR to the Court of Common Pleas of *Washington county.*

The facts of the case are fully stated in the opinion of the court, delivered by

BLACK, C. J.—The land in dispute was sold by the sheriff, as the property of Pattison, and bought by Spriggs, who sold to Stevens. Stevens agreed that he would convey to Pattison,

* This case was decided in 1853.

[Pattison *v.* Horn.]

upon being paid his purchase-money, and a debt due him by Pattison, within a fixed time. Pattison, not being able to raise the money, offered Horn as his surety, who was accepted. Horn gave his note to Stevens for the price of the land, but whether jointly with Pattison or not, is doubtful. The conveyance was then made by Stevens to Horn; and Pattison, who had been turned out of possession by Stevens, was immediately put in again by Horn. This occurred in April, 1844. In May, 1848, Pattison and Horn had a settlement between them, and though the witness, who was present and made the calculations for them, was unable to recollect whether the price of the land was, or was not, included in their accounts, there are several very strong circumstances which go to show that it was then fully paid. The court below charged, that the deed which Horn obtained could not be regarded as a mortgage without a virtual repeal of the Statute of Frauds; that Horn was not a trustee for Pattison, unless there was a previous agreement that the former should buy for the use of the latter, and by that means got the land at a lower price; and that, even if the price of the land was settled for between the parties in 1848, it was no more than a recognition of the trust, which was insufficient.

A parol promise to convey lands, gives no title to the promissee. A trust cannot be established by merely showing that the owner of the legal title promised, when he bought, that he would convey to the alleged *cestui que trust*, upon his being repaid the purchase-money. Such an agreement is within the Statute of Frauds, and, therefore, though an action at law may be sustained upon it, a specific execution will never be decreed. If the defendant has nothing else to rely upon, he has a forlorn case. But when an absolute conveyance is taken by a surety or creditor, as a security for the debt, parol evidence may be given to prove the true nature of the agreement, without violating either the Statute of Frauds, or that rule of evidence which forbids that a written paper shall be varied by parol, (6 W. 131.) A man cannot take a conveyance of land in pledge for the payment of money, and afterwards hold it as his own. If, therefore, the plaintiff below agreed with defendant that he would become surety for him to Stevens, and took the deed to himself in order to secure the reimbursement of the money, which he bound himself to pay, he was a mortgagee of the land.

The evidence on this point should have been submitted to the jury, with instructions to treat the deed as a mortgage, if it was so intended.

If, however, this was not a mortgage, but a simple parol agreement to sell the land to Pattison, at the price paid for it by Horn, is it then within the Statute of Frauds? This depends upon the question whether the agreement was so far executed, that the

vendor could not refuse to convey without being guilty of a fraud. Pattison went into possession under the agreement; the property was so managed by him, that its annual value increased three-fold and more; he made improvements; and he alleges, that he paid the whole of the purchase-money. If these things be true, then Horn, in denying the contract, or refusing to execute his part of it, and attempting to keep both land and the purchase-money, for which he had sold it, could not call himself an innocent man, with a free conscience. Indeed it is not easy to see how a man could contract greater turpitude in such a transaction.

We have no fault to find with that part of the charge which relates to the trust *ex maleficio;* for it *is* necessary, in such a case as this, that Horn should have agreed beforehand to buy for Pattison, and, in consequence of such agreement, have got the land at an under value, before a court of equity will decree the execution of the trust on payment of the purchase-money. It is very probable that there was no trust *ex maleficio* in the case.

The plaintiff was either a mortgagor or a vendor, or else it is not true that there was any contract at all between him and the defendant. The latter proposition cannot possibly be true, if the purchase-money was paid by Horn, as he alleges it was, in 1848. What could induce Horn to receive it, except a consciousness that it was due to him on some kind of agreement? And what could be his agreement except a contract of sale, or a bargain which made his deed a mortgage? Can it be tolerated that a man shall walk into a court of justice, with the purchase-money of land in his pocket, and demand the possession of that same land, on the ground that he who paid for it has no title? If the defendant can prove that he settled for the purchase-money, he stands on impregnable ground. It is not our duty to say whether this important fact was satisfactorily proved or not. The court should have submitted it to the jury, with instructions, that if the price of the land was embraced in the accounts settled by the parties, the plaintiff had no shadow of a claim in equity. In case the jury had believed the purchase-money was not paid, a verdict for the plaintiff would have been right enough, even though they had also thought the deed was a mortgage; for a mortgagee may recover possession in ejectment, and keep it until the debt be paid.

The proper charge would have been: 1. If this was a mortgage, and the debt for which it was a security was unpaid, in whole or in part, to find for the plaintiff. 2. If it was a parol sale, and the defendant was in possession under it, and had made valuable improvements, for which he could only be paid by keeping the land, but had paid no purchase-money, then a verdict for the

plaintiff to be released on payment of the purchase-money within a given time. 3. If part, only, of the purchase-money was paid, then a similar verdict with a similar condition for the payment of the balance. 4. If it was a sale, and the whole purchase-money paid, a verdict for the defendant. 5. In case there was no contract between the parties, or a mere parol contract not executed so far that a recision would be unjust, then, also, the plaintiff should have an unconditional verdict.

Judgment reversed, and *ven. fa. de novo* awarded.